## WESSEL v NEWHOF STORES, INC

Ohio Common Pleas, Hamilton Co.

Decided March 16, 1938

Harry C. Busch, Cincinnati, and Emil Vale, Cincinnati, for plaintiff.

J. G. DeFosset, Cincinnati, for defendant.

## OPINION

By DEMPSEY, J.

On March 27, 1929, Anna P. and Henry P. Wessel made and executed to the defendant corporation, Newhof Stores, Inc., a lease of the entire premises, land and building, at 1214 Linn street, Cincinnati, Ohio, for a period of five years from April 1, 1929, to March 31, 1934, at a rental of $72.50 per month, in advance, for the first twelve months of said term, and thereafter at a rental of $75.00 per month, in advance, for the remainder of said term. Said indenture also conferred on the defendant lessee an option of renewal for an additional five years, to March 31, 1939, at a yearly rental of $900.00, payable in monthly instalments of $75.00, in advance. The ground floor store room in the property was used by the defendant as an annex to, or branch of its dry goods business; its main store being located a square or two away in the same neighborhood.

The defendant corporation duly paid the stipulated rental to said lessors for the period through February 1932. At that time, by reason of unfavorable business conditions, the defendant lessee sought a reduction in the rent as an alternative to its going out of business at the leased location. After some negotiations, the lessors agreed to, and did thereafter, accept $60.00 per month as the rental beginning with March 1932, and down through and including October 1933.

During this latter period, the defendant corporation got into arrears with the rent for the month of March, 1933; and thereafter, for the balance of its occupancy, it was continuously one month behind, paying the rent for each particular month on or before the 10th day of the following month. The lessors acquiesced in that arrangement.

Toward the end of October 1933, by reason of the continued economic depression, and more especially on account of changes in the population and character of the neighborhood arising out of the bad housing situation there, the defendant lessee again asked for, and after some discussion, received from the lessors a further reduction of the rental to the sum of $45.00 per month. Rent at that rate was paid by the defendant corporation, and accepted and receipted for by the lessors, through the month of February, 1934.

In March, 1934, the defendant corporation's president and general manager, in anticipation of expiration of the lease on March 31, 1934, had a conference with the lessor, Anna P. Wessel, regarding the possibility of obtaining a new lease for five years, from and after April 1, 1934, at the prevailing reduced rental. She referred the matter to her legal counsel, who rejected

the idea of a new lease, and told defendant's president and general manager to continue with the current arrangement under the old lease.

On March 20, 1934, the said lessors, Anna P. and Henry P. Wessel, executed a deed conveying to the plaintiff, Celia P. Wessel, the reversion in and to said leased premises. Said deed was recorded on March 27, 1934. From that time on until April 1, 1936, the defendant lessee paid to said plaintiff, as the assignee of the reversion, the monthly rent in arrears, at the rate of $45.00, which plaintiff accepted without demurral.

On April 1, 1936, defendant surrendered possession of the premises. Thereafter, plaintiff received no rental payments from the defendant, nor was she able to procure any other income from the premises down to March 5, 1937, upon which date she sold the same.

Plaintiff brings this action to recover from the defendant the difference between the rents stipulated in the lease, and the reduced amounts actually paid from April 1, 1932, to April 1, 1936; also for the full rental of $75.00 per month for the period from the abandonment of the premises on April 1, 1936, to the date of expiration of the contemplated renewal term, March 31, 1939.

Plaintiff bases her claims on the following grounds:

1. That the reductions in rent as agreed to by the lessors, and thereafter accepted by them, and by the plaintiff, are not supported by a valuable consideration, and are therefore not binding, and,

2. That defendants occupancy of the premises for the two years subsequent to the expiration of the original term of the lease was in exercise by defendant of the option of renewal for the additional full term of five years, at the stipulated rental of $75.00 per month.

The defendant not only controverts the position of the plaintiff on these two points, but asserts further that the plaintiff as simple assignee of the reversion, and nothing more, has no action for he unpaid portions of the rents accruing prior to her acquisition of title, even if they were still owing to the original lessors, without a positive showing by plaintiff of specific conveyance to her, by the lessors, of such claims for the unpaid portions of rent.

That contention of the defendant is applicable, of course, to those rentals, due and payable, for the period through March 31, 1934; that is, those which accrued prior to the assignment to plaintiff. As to them, even if the reductions, as agreed to by the lessors were void for want of consideration, the plaintiff could not recover the difference in this action, unless the lessors' claims therefor have been passed on to the plaintiff by a specific grant from the lessors. The right to recover rents depends upon the ownership of the reversion at the time the rents accrued. Smith v Harrison, 42 Oh St 180; Levelace v Erie R. R. Co., 2 Oh Ap 404.

A subsequent transfer of the reversion does not carry to the assignee any claim to such rents as became due while the reversion was held by the grantor. Hughes v Forsyth, 26 O.C.C. (N.S.) 13.

To acquire a right to such prior rentals the transferee of the reversion must show a definite grant to him, over and beyond the mere conveyance of the reversion. 24 Oh. Jur. 1064, Landlord and Tenant, §316.

Upon that point plaintiff has failed to sustain its burden of proof. There is no showing of a specific grant of those rental claims by the lessors to the plaintiff. The mere fact that the lessors permitted the plaintiff to collect from the defendant and that the defendant paid to the plaintiff, in the month of April, 1934, the rental installment due for March 1934, the last month of lessor's ownership, is not enough to show a vesting in the plaintiff by the lessors of their claims, if any, to the unpaid portions of the rent accruing while they held the reversion.

But, even if the plaintiff was in a position to now assert the claims of the lessors under the assignment, she cannot maintain this action. Both as to the reductions of the rents due under lessors' reversion, down to March 31, 1934, and the rents actually paid to and collected by plaintiff, subsequent to that date, under her ownership, plaintiff is not now in position to repudiate the arrangement with the defendant. The reduced rents were duly paid by the defendant all through his occupancy of the premises, and were accepted by and receipted for by the lessors and by the plaintiff, during their respective ownerships of the reversion. So, for the period through March 31, 1936, we have an accomplished fact, an executed agreement, which means that the plaintiff cannot now treat the rental reductions as a nullity for want of consideration and sue for the unpaid portions called for by the original stipulations of the lease. Thurston v Ludwig,

624

6 Oh St 1; Mehurin v Stone, 37 Oh St 49; White v Cooper Co., 7 O.C.C. (N.S.) 114.

It is fundamental, of course, that an agreement for the modification of an existing contract requires consideration to be effective. That is especially true as to an oral agreement modifying a prior written contract. Thurston v Ludwig, 6 Oh St 1; Doyle v Dunne, 144 Ill. App. 14; 9 O. Jur., Contracts, §57.

However, to the extent that an oral agreement of modification of an existing contract, although without consideration, has been acted upon by the parties, it is binding upon them and may not be repudiated. Thurston v Ludwig, 6 Oh St 1; Mehurin v Stone, 37 Oh St 49; Cleveland v Phillips, 9 Abs 71; McKenzie v Harrison, 120 N. Y. 260; Bowman v Wright, 65 Neb. 661; Conlon v Hardware Co., 117 Wash. 378; 9 O. J., Contracts, §§58, 63.

The principle is equally operative where, as in this case, the modification was really a waiver by the lessors of the full performance by the defendant of the rental stipulations of the lease. Williams v Fortlage, 17 O.C.C. (N.S.) 242; Hurlbut v Butte-Kans. Co., 120 Kansas, 205; 9 O. J., Contracts, §§58, 289. Annotations — 43 A. L.R.—1453, §2-D-.

Accordingly the plaintiff has no claim, nor right of action against the defendant for the rentals which were due and payable down to March 31, 1936, inclusive.

The plaintiff's claim for the rentals for the period from April 1, 1936, through March 31, 1939, can only be sustained on the theory that the defendant's occupancy of the premises after March 31, 1934, the date of expiration of the original five year term, was in exercise of the option of renewal under that lease, at the full rentals therein provided for, to-wit, $900.00 per year, payable in monthly installments of $75.00. Such continued occupancy by the defendant, unexplained, without any showing of discussions between defendant and the lessors of the rentals and other matters, might justify that conclusion. Gross v Closs, 6 Oh Ap 140; Foster v Ellison, 12 O.C.C. (N. S.) 399.

But such was not the situation in this case. The evidence shows that the defendant contacted the lessor Anna P. Wessel, and also, at her suggestion, lessors' attorney, during the month of March, 1934, for the very purpose of getting a new term of five years at the then prevailing reduced rental of $45.00 per month. It is quite clear that the defendant did not want to accept the offer, or to be bound by the rental terms, embodied in the option under the old lease.

An extension option under a lease is merely a continuing offer from the landlord to the tenant, and it does not become binding until accepted by the tenant. Brewing Co. v Tomash, 17 O.C.C. (N.S.) 93; Baxter Laundries, Inc. v Lucas, 43 Oh Ap 58; 24 O. J., p. 1234, Landlord and Tenant, §481.

Neither the landlord nor the tenant can bind the other to a new tenancy under terms that have not been actually or impliedly agreed to. The mutual intention of the parties controls as to the new term. Bumiller v Walker, 95 Oh St 344; Hellenbush v tischbein, 54 Oh Ap 162 (22 Abs 423), 7 O.O. 33; Lane v Greene, 21 Oh Ap 62 (4 Abs 699), Smith v Gulf Refining Co., 57 Oh Ap 73 (25 Abs 158), 8 O.O. 475.

Even though the tenant does continue in the premises after the expiration of the original term, he may explain the basis of his holding over, may show that it is on different terms from those provided by the option to renew. Brown v Schoonmaker, 6 W.L.B. 22; Haggerty v Maley, 32 O.C.A. 505.

It is quite clear from the record in this case that there was no exercise by the defendant of the privilege of renewal as given by the original terms of the lease. The hold-over was without any extension contract under the option, and without any specific agreement with the lessors for a new tenancy. In fact, it is quite clear that the lessors did not want to bind themselves to the defendant for a definite term at the reduced rentals. Accordingly, the defendant, by his hold-over without any formal renewal, and by reason of plaintiff's acceptance of rent from him, became a tenant for the rental paying period; that is, from year to year. His term expired on the 31st day of March of each year. Gross v Levin, 12 Abs 142; Wineburgh v Toledo Corp., 125 Oh St 219; Haggerty v Maley, 32 O.C.A. 505.

Therefore, in leaving the premises on March 31, 1936, and not paying any further rentals thereafter, the defendant corporation was only doing what it was free to do. It had no obligation to the lessors, or to the plaintiff as their assignee, to act

otherwise. The rentals, to which defendant was bound for the period of actual occupancy under that hold-over, that is, from March 31, 1934, to March 31, 1936, would be in the same amount as was being paid by it at the termination of the original lease, there being no contrary arrangement. That was what defendant had actually paid to the plaintiff, and thereby it discharged in full its obligations in that regard. **Madison Bldg. Assn. v Eckert, 49 Oh Ap 210, 3 O.O. 96.**

In view of the foregoing, the petition is dimissed and judgment will be entered for the defendant.